**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

YVETTE S. ATKINSON,
STEVENS SANCHEZ
Plaintiff,

vs.

STEPHEN PUSTILNIK, M.D.

Defendants

**COMPLAINT AND JURY DEMAND**

Plaintiffs Yvette S. Atkinson ("Ms. Atkinson") and Stevens Sanchez ("Mr. Sanchez"), by and through their attorneys, Quainton Law, PLLC, and Ty Clevenger, file this Original Complaint against Defendant Stephen Pustilnik, M.D. ("Dr. Pustilnik" or "Defendant"), and allege as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over Ms. Atkison's federal claims pursuant to 28 U.S.C. § 1331, as they arise under the Constitution and laws of the United States, including 42 U.S.C. § 1983. The Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.
2. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b), as Defendant resides and works in Fort Bend County, Texas, which is located within the Southern District of Texas, Houston Division, and a substantial part of the events or omissions giving rise to the claims occurred there.

## PARTIES

3. Plaintiff Yvette S. Atkinson is a woman of Mexican origin whose maiden name is Sanchez. She is a lifetime resident of Fort Bend County, Texas.

4. Plaintiff Stevens Sanchez is the brother of Yvette Atkinson and a lifetime resident of Fort Bend County, Texas

5. Defendant Stephen Pustilnik, M.D., is the Medical Examiner for Fort Bend County, Texas. He is sued solely in his individual capacity.

## STATEMENT OF FACTS

5. Ms. Atkinson's husband, Simon J. Atkinson ("Mr. Atkinson"), died of a self-inflicted gunshot wound on June 5, 2020, in Sugar Land, Texas.

6. The Fort Bend County Assistant Medical Examiner, forensic pathologist William McClain, M.D., performed an autopsy shortly thereafter and found no evidence of foul play.

7. The Sugar Land Police Department ("SLPD") investigated Mr. Atkinson's death and concluded that it was a suicide. SLPD conducted firearms tests using the gun found near Mr. Atkinson's body and ammunition from his pocket, confirming that the striations matched the fatal bullet. No evidence at the scene suggested a struggle or foul play. Mr. Atkinson's body was released to the family and cremated.

8. Approximately one week after the autopsy, Ms. Atkinson's brother, Stevens Sanchez, contacted Dr. Pustilnik on Ms. Atkinson's behalf to inquire about the delay in issuing a death certificate with a manner of death. The discussion escalated into a heated argument.

9. In retaliation, Dr. Pustilnik refused to issue a final death certificate listing the manner of death, despite the autopsy and SLPD findings. This delay violated Ms. Atkinson's due process rights and prevented her from collecting the insurance benefits.

10. On or about July 6, 2020, Dr. Pustilnik contacted Hani Qadri, head of community outreach for the Fort Bend County Commissioners' Office, and spoke with her about Mr. Atkinson's death. During this conversation, Dr. Pustilnik made false and defamatory statements about Plaintiffs, insinuating that the death "does not look in any way, shape, or form like a simple suicide" and that there was "something really suspicious going on." Those statements were false, as were the following allegations by Dr. Pustilnik:

    - That Ms. Atkinson "will not cooperate with Mr. Sanchez even so -- even though Mr. Sanchez claims to be working on her behalf." In context, Dr. Pustilnik was falsely implying that Mr. Sanchez had some personal, improper financial motive for seeking the life insurance proceeds.

    - That Ms. Atkinson would not respond to phone calls from the police.

    - That Ms. Atkinson was being "100 percent uncooperative" with police. Referring to Ms. Atkinson, Dr. Pustilnik said, "[t]he police are asking you about their investigation into your husband's death and you're being 100 percent uncooperative. So that raises the suspicions of everybody through the roof."

- That “the family, the decedent and his wife [*i.e.*, Ms. Atkinson], were involved in some weird pyramid schemes – financial double-dealings of some sort,” and that police had discovered that Mr. and Ms. Atkinson were involved in “financial tomfoolery.”
- That Mr. Sanchez was “vicious.”

The foregoing statements / allegations were discovered by Plaintiffs on or after October 15, 2024, during discovery in the matter of *Atkinson v. Pustilnik*, Case No. 4:22-cv-04315 (S.D. Tex.).

11. On or about July 7, 2020, Dr. Pustilnik contacted Fort Bend County Judge K.P. George and made additional false and defamatory statements.

12. Dr. Pustilnik told Judge George that Mr. Sanchez

> claims that he is acting on behalf . . of his sister to facilitate getting the death certificate. Now his aggressive nature now makes myself and all the police investigators suspicious that that's not actually true. Okay?

Dr. Pustilnik deliberately lied about the Sugarland PD in smearing Ms. Atkinson, stating:

> Mr. Atkinson and his wife are – *according to Sugarland PD* – involved in some shady business dealings. They don't know if they're pyramid schemes or investments where they're bilking investors out of money (emphasis added).

In elaborating on his lies about the Sugarland PD, Pustilnik further stated:

> *Sugarland PD -- they know . . . Once they found out* that -- all this sort of unsavory financial dealings that Mr. Atkinson and his wife were doing, *they realized that this family* -- it's not just a simple case anymore. Okay? There's something weird going on (emphasis added).

13. Dr. Pustilnik further told Judge George that Mr. Sanchez had a "monetary stake in getting the insurance payout as fast as possible" and that the family's lack of cooperation raised police suspicions about the nature of Mr. Atkinson's death. The foregoing false statements were discovered by Plaintiffs on or after October 15, 2024, during discovery in the matter of *Atkinson v. Pustilnik*, Case No. 4:22-cv-04315 (S.D. Tex.).

14. During the same period (July-September 2020), Dr. Pustilnik contacted a secretary in Fort Bend County Commissioner DeMerchant's office and made further false and defamatory statements about Mr. Sanchez, claiming he had been "verbally abusing and harassing the police and myself for two months already" and that there was a "financial incentive that he is not admitting to." Dr. Pustilnik described a "toxic family dynamic" and alleged that "even his sister [i.e. Ms. Atkinson] -- the widow of the decedent who is his sister – she won't have anything to do with him either.· Okay? ...She won't talk with him.· She won't let him in the house…" Dr. Pustilnik stated:

> He's claiming that he's working on his sister's behalf but he can't get her to talk to anybody and she won't talk with him. *So both the police and I* are getting kind of suspicious about his motivations (emphasis added).

Dr. Pustilnik further alleged that Mr. Sanchez was threatening and could be physically dangerous. The foregoing false statements were discovered by Plaintiffs on or after October 15, 2024, during discovery in the matter of *Atkinson v. Pustilnik*, Case No. 4:22-cv-04315 (S.D. Tex.).

15. For over a year, Dr. Pustilnik neither finalized the death certificate nor convened an inquest, despite having no basis to question the suicide determination.

16. When Dr. Pustilnik finally convened an inquest—after SLPD had closed its investigation—he exceeded his authority by ordering Ms. Atkinson to produce all ammunition (75 rounds) from the Atkinson household for his own firearms test, despite lacking any qualifications in ballistics or firearms examination.

17. Dr. Pustilnik informed Mr. Sanchez and an SLPD detective that he would personally conduct the test and ordered Ms. Atkinson to testify under oath.

18. Dr. Pustilnik had no professional expertise to conduct such a test, which is the domain of law enforcement, not medical examiners. SLPD had already performed the test using ammunition from Mr. Atkinson's pocket. Dr. Pustilnik could have purchased matching ammunition if needed, but his demand for 75 rounds was excessive and unwarranted.

19. A local justice of the peace ordered Ms. Atkinson to comply, despite a letter from an SLPD detective confirming the investigation was closed.

20. During the inquest process, Dr. Pustilnik publicly suggested he did not believe SLPD's suicide conclusion and insinuated to Mr. Sanchez, the SLPD detective, and others that Plaintiff had murdered her husband as part of an illegal financial scheme to fraudulently collect the $1,000,000 life insurance benefits. These false statements smeared Plaintiff's character and reputation by portraying her as a criminal involved in murder for financial gain, an illegal scheme. The statements detailed above, including allegations of "shady business dealings," "pyramid schemes," "bilking

investors," "financial tomfoolery," and "unsavory financial dealings," further stigmatized Plaintiff by accusing her of financial impropriety and fraud, and falsely stated that the police were actively investigating such matters.

21. Dr. Pustilnik knew Plaintiffs were of Mexican origin (evident from Ms. Atkinson's maiden name, Sanchez, and her brother's surname) and acted with animus based on her ethnicity.

22. These defamatory insinuations were made under color of state law and were directly connected to Dr. Pustilnik's scheme to delay and withhold an accurate death certificate, thereby preventing Plaintiff from obtaining her property interest in the death certificate.

23. Plaintiffs have suffered severe emotional distress, reputational harm, and financial injury as a result of Dr. Pustilnik's false statements and the resulting delay, which lasted years.

24. Dr. Pustilnik's actions were motivated by retaliation and ethnic animus, not legitimate investigative needs.

## CAUSES OF ACTION

### Count I
### Violation of Due Process Under 42 U.S.C. § 1983 (Stigma-Plus)

25. Ms. Atkinson incorporates the preceding paragraphs as if fully set forth herein.

26. Under the Fourteenth Amendment to the U.S. Constitution, Ms. Atkinson has a protected liberty interest in her reputation and a property interest in obtaining an accurate and timely death certificate for her husband, as established by Texas law

(e.g., Texas Code of Criminal Procedure Art. 49.25), which entitles her to such certification without arbitrary delay.

27. Dr. Pustilnik, acting under color of state law as Fort Bend County Medical Examiner, deprived Ms. Atkinson of these interests without due process by publicly disseminating false and defamatory statements insinuating her involvement in an illegal financial scheme (murder for insurance fraud, shady business dealings, pyramid schemes, bilking investors, financial tomfoolery, and unsavory financial dealings), which stigmatized her reputation.

28. This stigma was coupled with a "plus" factor: the tangible alteration of Ms. Atkinson's legal status and property rights, as the defamatory statements were used as pretext for a scheme to unreasonably delay and withhold the death certificate, preventing her from collecting $1,000,000 in insurance benefits to which she was entitled.

29. Pursuant to the "stigma-plus" doctrine (*Paul v. Davis*, 424 U.S. 693 (1976)), this conduct violated Ms. Atkinson's procedural and substantive due process rights.

30. Dr. Pustilnik's actions were intentional, reckless, and motivated by retaliation and ethnic animus, with no legitimate governmental purpose.

31. Ms. Atkinson could not have brough this “stigma plus” claim before learning of the false and defamatory statements of Dr. Pustilnik on and after October 15, 2024.

**32.** As a direct and proximate result, Ms. Atkinson suffered reputational harm, emotional distress, financial losses, and other damages, in an amount to be determined at trial, but in no event less than $2 million.

**Count II**
**Defamation Under Texas Common Law**

32. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

33. Dr. Pustilnik published false statements of fact to third parties (including Hani Qadri, Judge K.P. George, the secretary in Commissioner DeMerchant's office, and the SLPD detective) insinuating that Ms. Atkinson murdered her husband as part of an illegal financial scheme to defraud the insurance company, and that Ms. Atkinson and her husband were involved in shady business dealings, pyramid schemes, bilking investors, financial tomfoolery, and unsavory financial dealings, which the police were investigating, that Mr. Sanchez had an illicit financial motive in seeking to help his sister, that Mr. Sanchez' "aggressive" "vicious" nature made the police suspicious that he was not acting to help his sister, with the insinuation that he was pursuing some illegal financial gain aligned with the "financial impropriety" of Ms. Atkinson and her husband.

34. These statements were defamatory *per se*, as they accused Plaintiffs of serious crimes (murder, fraud), injuring their reputation and exposing them to public hatred, contempt, or ridicule.

35. Dr. Pustilnik acted with actual malice, knowing the statements were false and / or speaking with reckless disregard for their truth, fabricating out of whole cloth statements, views and opinions falsely attributed to the police in order to slander and smear Plaintiffs.

36. As a direct and proximate result, Plaintiffs have suffered damages, including reputational harm, emotional distress, and economic losses in an amount the be determined at trial, but in event less than $4,000,000.

**Claims Not Asserted**

37. In this Complaint, the Plaintiffs only assert claims that were discovered on or after October 15, 2024.

**38. Accordingly, and notwithstanding any other statements, allegations, or claims in this Complaint, the Plaintiffs do NOT assert any claims or causes of action that were asserted in *Atkinson v. Pustilnik*, Case No. 4:22-cv-04315 (S.D. Tex.).**

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that the Court:

a. Enter judgment in favor of Plaintiffs and against Defendant on all counts;

b. Award compensatory damages in an amount to be determined at trial, including but not limited to economic losses, emotional distress, and reputational harm;

c. Award punitive damages to punish Defendant's malicious conduct and deter similar actions;

d. Award attorney's fees and costs pursuant to 42 U.S.C. § 1988;

e. Grant such other and further relief as the Court deems just and proper.

Dated: October 15, 2025

**PLAINTIFFS DEMAND A JURY TRIAL.**

***/s/ Eden P. Quainton***

Eden P. Quainton
Quainton Law, PLLC
2 Park Ave., 20th Fl.
New York, NY 10016

(212) 419-0575
(212) 376-5699
*eden.quainton@quaintonlaw.net*

***/s/ Ty Clevenger***
Ty Clevenger
Texas Bar No. 24034380
212 S. Oxford Street #7D
Brooklyn, New York 11217
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

***Counsel for Plaintiff***

Case 4:25-cv-04923    Document 1    Filed 10/15/25 in TXSD    Page 12 of 12